## E. H. POLK v. MEMPHIS TRACTOR COMPANY.

Western Section.  April 2, 1930.

Petition for Certiorari denied by Supreme Court, June 28, 1930.

H. H. Barker and Metcalf, Metcalf & Apperson, of Memphis, for appellant.

Crabtree, Crabtree & Harnell, of Memphis, for appellee.

SENTER, J. The complainant seeks to recover of the defendant, Memphis Tractor Co., a corporation organized under the laws of the State of Tennessee, the amount alleged by complainant to have been paid by him to the defendant on two Monarch tractors, alleged to have been purchased conditionally by complainant from defendant on a specific guarantee that the tractors would give to complainant as good service and satisfaction, if not better, than "a Caterpillar Sixty" tractor, which type of tractor complainant had operated for some years in connection with his road contracting work.

At the time complainant gave the order for the two tractors to defendant, he also purchased a Western Crawler wagon, to be used in his road contracting work and he alleges in his bill that he is entitled to recover in this suit the amount that he has paid on the two Monarch tractors, less the amount that he owes defendant for the Crawler wagon. He alleges that the two tractors which were delivered to him by defendant under said guaranty, did not prove satisfactory, and that soon after he began using the same the mechanical defects began to appear and that defendant in an effort to make the tractors satisfactory sent numerous mechanics to work on the tractors, and finally had the respective tractors returned, one at a time, to the factory in an effort to make them work and perform as represented and guaranteed; that complainant complained almost from the beginning of the use of the tractors that they were unsatisfactory, but that the defendant kept assuring complainant that they would and could make the tractors do the work to the entire satisfaction of complainant and fully meet the guaranty; that he gave the defendant every opportunity to make the tractors perform the work they were purchased to perform to his satisfaction, but said tractors were never made to so perform, or to come up to the guarantee, and he finally so notified the defendant and demanded that they repay to him the money he had paid on the tractors, less the amount he owed on the Crawler wagon, and take the tractors back.

The bill charges that the tractors were sold to him, on the conditions above and on the guarantee as above mentioned, at the price of $5,420 each, or a total of $10,840 for the two tractors, and that he agreed to pay the defendant the sum of $2,250 for the Crawler wagon; that he paid $1,000 cash on each of the tractors and $250 on the wagon, or a total cash payment of $2,250, and executed his notes to the defendant, payable monthly, for the balance of the purchase price, and that he has paid a total amount on the two tractors and the wagon of $7,117.20. He further charges that the tractors were sold to complainant F. O. B. Jackson, Tennessee, and were shipped by defendant from the Allis Chalmers Mfg. Co., to Jackson, and that complainant paid the freight thereon of approximately $300. It is alleged in the bill that for about three years prior to the pur-

chase of the Monarch tractors, he had owned and used in his contracting business, a Caterpillar Sixty tractor, which fact was known to the defendant; that the Caterpillar Sixty had been thoroughly tested and tried by complainant and had proved satisfactory. It is alleged that the defendant, dealing in the Monarch tractor, and being the distributing agent therefor in the Memphis territory, was exceedingly anxious to place the Monarch tractors to compete with the Caterpillar tractor in the Memphis trade territory; that the Caterpillar Sixty tractor had been used for many years and was well established in said territory and was rendering satisfactory service to contractors using it; that the Monarch tractor, manufactured by the Allis Chalmers Mfg. Co., and handled by the defendant as aforesaid, had not been in general use by contractors in the territory, and that they were in the experimental state of development by the manufacturer, and that their performance and endurance in construction and contracting work was yet to be demonstrated. Complainant alleges that it is for these reasons that he would not purchase said tractors for use in his construction business except upon the conditions and warranty of the defendant that they would render as satisfactory service as the Caterpillar tractor, and that said warranty had wholly and utterly failed, and that the conditions upon which he agreed to purchase the two tractors had failed.

The answer admitted that the first tractor purchased was on the guarantee as set out in the bill, but denies that the same guarantee was given or applied to the second tractor, and that said tractors were not purchased at the same time, and alleges that the first tractor had been purchased by complainant and was in use, and that complainant had expressed satisfaction with it at the time the second tractor was purchased on a second and distinct order and contract. The answer further alleges that the two said tractors were capable of doing the usual and ordinary work expected, but that any failure to perform was due to the unusually heavy work to which the complainant put the two tractors to use, and to the neglect of the machines by the complainant and his employees, and the lack of skill on the part of the employees of complainant who operated the same for complainant, resulting in the necessity for repairing and mechanical adjustments. The answer denies all other material allegations in the bill and denies that complainant is entitled to recover the amount of payments paid on the tractors. The answer is then filed as a cross bill, and by the cross bill seeks to recover of complainant, the cross-defendant, the alleged balance due of $5,978.80 on the conditional sales notes executed by complainant in the purchase of the machines, and reasonable attorneys fees as provided in the face of the notes, and the interest and seeks to recover of complainant the further sum of $22,650 as the rental value for the use of said

tractors, and the further sum of $829.22 for services rendered in repairing and for parts furnished the machines at the special instance and request of cross-defendant.

On the hearing of the cause the Chancellor decreed in favor of complainant, Polk, and decreed a judgment in favor of said complainant for the sum of $4,943.26, with interest thereon from the date of the filing of the bill, $214.20, a total of $5,157.46, which said sum represented the aggregate amount paid on the two tractors and the wagon, less the full purchase price of the wagon, and all the costs of the cause.

From this decree the defendant has appealed to this court, and has assigned errors.

By the several assignments of error, it is said that the Chancellor erred, (1) in holding that Polk was entitled to return the two tractors, and have a decree for the purchase money paid by him. (2) In holding that Polk acted reasonably and not capriciously in deciding that the tractors were not satisfactory to him. (3) In holding that the tractor company was not entitled to a decree on its cross-bill against Polk for the unpaid balance of the purchase money notes on the two tractors. (4) In not permitting the tractor company to retain the sums paid by Polk according to the contract terms of the purchase money notes, which provided that in the event the tractors were retaken or redelivered no purchase money was to be refunded to Polk. (5) In holding the tractor company was not entitled to a decree against Polk on its cross-bill for the $829.22 for parts and mechanics hire and expenses incurred in repairs to the tractors; and (6) in holding that the tractor company could not recover from Polk on its cross-bill on a quantum meruit for the use of the two tractors, if Polk was entitled to rescind the sale of the said two tractors, to receive back the purchase money paid and have balance of notes cancelled.

These several propositions will be considered and discussed collectively and not separately.

The record contains a finding of the facts by the Chancellor, and upon which the decree is based.

The material facts, as found by the Chancellor, with but few exceptions, meets with our concurrence. It appears from the record that on May 21, 1928, at the solicitation of F. H. Marshall, the Vice-President and General Manager of defendant, Polk signed the order for the first tractor, in Memphis, at the office of defendant, and gave a second-hand or used tractor and $500 in cash, as the first payment, and executed a conditional sales contract and his twelve promissory notes, each for the sum of $248 payable monthly for the balance of the purchase price. It appears that this order is on the regular printed form used by the defendant, and on this printed form it

is stated that the tractor was sold subject to the manufacturer's guarantee printed on the back of the contract. The printed blank upon which the contract was filled out, contained a clause: "This order constitutes the entire contract."

Polk was personally acquainted with Marshall, and had other business transactions with Marshall prior to the time that Marshall became connected with the tractor company, the defendant in this suit. We think it clear from the record that among other inducements was the personal friendship between Marshall and Polk that inclined Polk to want to favor Marshall in the purchase of tractors to be used by him in connection with his road construction and other projects. Marshall knew that Polk was using the Caterpillar Sixty type of tractor manufactured and sold by a different concern, and he was anxious to have Polk discontinue the use of the Caterpillar type of tractor and to have him use the Monarch tractor which he was then selling. It is evident from the record that the Caterpillar Sixty type of tractor had given Polk satisfactory service and that he was somewhat doubtful of the Monarch type, and it was in this situation that Marshall proposed to give Polk a special guaranty on the Monarch tractor, in addition to the regular guaranty contained on the reverse side of the order or contract blank. This special guaranty is as follows:

"Mr. E. H. Polk,

"Dear Sir:—

"The Memphis Tractor Company agrees to sell you a 10-ton Monarch Tractor, subject to the following terms:

"1. That it will give you as good if not better satisfaction than the Caterpillar Sixty that you have operated in the past. You are to be the sole judge in the matter.

"2. Should your work be held up on account of bad weather conditions or out of work, the Memphis Tractor Company will not attempt to foreclose on this machine, but will set the notes forward in order that you may take care of same.

"Signed this 21st day of May, 1928.

"Memphis Tractor Company,

"F. H. Marshall."

At the time Polk signed the usual blank form of contract, the blanks being filled in, he also required the order form changed by interlineation, so as to set out this special guaranty in part as above quoted. Under the terms of the contract the title to the tractor was retained by the seller until the full amount of the purchase money was paid.

On the afternoon of the day that the order was signed in Memphis for the first tractor, Polk and Marshall drove from Memphis to Jackson, Tennessee, where the tractor then was in the custody of the rail-

road company, and after procuring the tractor it was driven out to the camp near Bemis, a short distance from Jackson, where Polk then had his construction camp and some demonstration was made of the tractor at that time. However, because of weather conditions the first tractor was used very little. It also appears that on May 30 complainant bought the second tractor, and he claims that the second tractor was purchased on the same terms and conditions and guarantee that was given to him on the first tractor. The defendant denies that this special guarantee was given on the second tractor, and contends that Polk had already expressed satisfaction with the first tractor, and therefore did not require the same special guarantee as to the second. Polk contends that he had not expressed satisfaction with the first tractor, and that he had had it in use very little on account of the weather conditions at the time he purchased the second tractor, and that he bought the second tractor subject to the same conditions and warranty that was given to him on the first tractor. He produced the first contract, but claimed to have lost or misplaced the second or his copy. Polk also signed what is referred to as an unloading receipt for both tractors, dated June 14, which was the usual form and stated that it was in satisfactory condition, etc. The material portion of the receipt states as follows:

". . . he has left everything in satisfactory condition, and the above numbered Monarch tractor is hereby accepted. . . ."

This receipt is the usual unloading receipt, and the words above quoted are printed on the receipt, which was signed by complainant.

However, we are of the opinion that the second tractor was bought under the same conditions and under the same guaranty as was given complainant on the first tractor. We think it clear from this record that both parties so understood it, and this is especially evidenced by a letter contained in the record, which is as follows:

"Memphis, Tennessee,
"10/17/28.

"Mr. E. H. Polk,
"City.
"Dear Sir:

"We have sold you two Monarch '75' tractors, which you have had in use for several months. On account of the present condition of these tractors, it is necessary that they be returned to the factory, one at a time, to be reconditioned and put in first class order. During the time this is being done, we will furnish you with one new '75' Monarch tractor for your use without charge and will guarantee against all defects of all kinds and if it is broken or damaged in your service or parts required they will be furnished without expense to you.

364

"In the event that the tractor is broken, due to the fault of Mr. E. H. Polk, or his operators, he is to pay for the necessary parts and service to repair same.

"In regard to the two tractors, Nos. 70017 and 70032, it is agreed that nothing in this arrangement is to vitiate or destroy the force of our guarantee on both of these tractors which reads as follows:

"'That it will give you as good if not better satisfaction than the Caterpillar "Sixty" which you have operated in the past. You are to be the sole judge in this matter.'

"The new '75' Monarch tractor No. 70141 will be delivered free of freight charges and there will be no freight for Mr. Polk to pay on the two Monarchs which are to be repaired and returned to him. The new Monarch '75' tractor is to be loaned to Mr. Polk during the repairs on the old tractors and is to remain the property of the Monarch Tractors Corporation.

"Yours truly,
"Memphis Tractor Company,
"(Signed)   W. C. Johnson, President."

It will thus be seen that the defendant understood the special guaranty to apply to both tractors. It is contended by appellant· that Mr. Johnson, the president of the defendant company, and who wrote the above letter, was not personally conversant with the facts, and mistakenly stated that the guaranty applied to both tractors. However, we do not think the record sustains this contention. We think under all the facts and circumstances, and by a preponderance of the evidence, the special guaranty applied to both tractors.

There is a considerable controversy between the complainant and the defendant on the question of the amount of work done on the respective tractors, and the number of times that mechanics were sent out to work on the tractors between the date of purchase and the time the tractors were sent in to be reconditioned as referred to in the letter above quoted of October 17, 1928. Appellee contends that the Chancellor in his finding of the facts got an exaggerated idea, or a mistaken impression from the evidence, as to the number of mechanics who worked on the machines and the number of days, and also the number of occasions on which mechanics were sent to work on the machines before the letter of October 17. However, this may be, the evidence clearly shows that almost continuously from the time these tractors were put to work until October 17th, they were more or less out of condition, and that this was not due to improper operation and improper care, and lack of proper oiling by complainants employees, who operated the tractors, as contended by defendant, but was due to mechanical defects.

We think the Chancellor reached the correct conclusion in his finding of the facts to the effect that the complainant had not acted

capriciously or insincerely in the matter of exercising his judgment with reference to the machines. It would appear that the complainant was very patient and indulgent and gave the defendant every opportunity to make good its guarantee.

We have carefully examined the evidence contained in the record, and find that the conclusions of fact reached by the Chancellor are supported by a decided preponderance of the evidence. We are also of the opinion that complainant is entitled to recover the amount that he had paid to the defendant on these tractors, with interest, less the amount which he owes the defendant for the wagon.

It is earnestly insisted by appellee that the complainant should pay either reasonable rental for these tractors during the time that he used them, or that defendant would be entitled to recover on a quantum meruit basis, and that its cross-bill should have been sustained and cross defendant allowed a recovery for the rental value or on a quantum meruit, and also for the mechanical services rendered by defendants in the matter of making repairs and furnishing parts.

We do not think this contention can be sustained. We think it clear from this record, that the complainant only kept these machines and tried to use them and did use them to some extent in his road construction work, but that he did so at the instance of the defendant and in order to give the defendant an opportunity of putting the tractors in condition to render satisfactory service.

The defendant was seeking to introduce these tractors in competition with the Caterpillar Sixty type, and no doubt did all it could to make its tractors perform in a satisfactory manner, and was all the time trying to make them meet the approval of complainant. But the fact remains that the defendant realized that the tractors were not performing the work in a satisfactory way and so as to meet the guaranty, and in an effort to correct the mechanical trouble had the machines returned to the factory for the purpose of overhauling and putting the machines in condition to do the work that they had failed to do. The defendant was anxious to have complainant keep and use the tractors and to give the defendant opportunity to make them measure up to the requirements and satisfaction of complainant, and it was for this reason that complainant kept and used the tractors as long as he did.

After a careful review of the record we find no error in the decree of the Chancellor, and the assignments of error are overruled and the decree is affirmed. Judgment will be rendered here for the amount of judgment below with cost, and interest on the judgment since its rendition in the court below, against defendant and surety on appeal bond, and appellee and sureties on the appeal bond will pay the cost of this appeal.

Owen and Heiskell, JJ., concur.